ELDER DEMPSTER & CO. v. MENGE.

(Circuit Court of Appeals, Fifth Circuit. March 10, 1908. On Rehearing, April 3, 1908.)

No. 1,731.

1. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where, in an action for injuries to a watchman by an explosion on a gasoline launch on which he was employed, he claimed that the explosion was caused by defendant's negligence in allowing gasoline to leak from machinery, etc., while defendant pleaded that plaintiff was negligent in pouring oil from one lantern into another just prior to the explosion, and that this was the cause thereof, and there was evidence that two lanterns were afterwards found where the explosion occurred, the court erred in refusing to submit the question of contributory negligence to the jury and in charging that the answer did not raise the defense of contributory negligence, but pleaded that plaintiff's negligence was the exclusive cause of the injury, and that, if the accident happened as plaintiff alleged, it could not have been in the way that defendant claimed it did, and vice versa.

2. TRIAL—WITNESSES—CREDIBILITY—IMPEACHMENT.

An instruction that the fact that plaintiff had not been impeached raised a presumption in favor of his account of the transaction was error; defendant being entitled to rely on the inherent improbability of plaintiff's story as inconsistent either with itself, or with the conceded facts in the case or matters of common knowledge.

3. SAME—INTEREST.

Plaintiff's interest in the case is always a matter to be considered in connection with the weight to be given to his testimony.

McCormick, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Henry P. Dart and B. W. Kernan, for plaintiff in error.

Frank E. Rainold and Armand Romain, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge. Charles Menge brought suit against Elder Dempster & Co. for damages for injuries which he sustained by reason of an explosion which occurred on a gasoline or naptha launch on which he was acting as watchman at the time of the explosion. The plaintiff claimed that the explosion was due to the ignition of the gas or vapor generated by the gasoline or oil stored in the tanks and pipes of the launch, and that the gas, vapor, and oil escaped from the tank and accumulated in the cabin of the vessel during the night because the stopcocks, valves, and apertures of the tank had not been closed properly by the master of the vessel, but were negligently left open or partly open. The ground of liability is that Menge was put by Elder Dempster & Co., by whom he was employed, to work in an unsafe place; that Elder Dempster & Co. knew or should have known all about the unsafe condition of the launch; and that Menge knew nothing about it. There was a general denial by the defendants of negligence, a plea of contributory negligence, and a further plea that

the plaintiff was guilty of independent negligence on his part which caused the accident.

It appears that it was the habit of the plaintiff to report to one Wilt, who was the foreman or roundsman of watchmen employed by Elder Dempster & Co., and on the evening of September 8, 1901, Menge reported for duty to Wilt, who told Menge to go up to the launch Edco, tied up at Walnut street and the river, and Menge went there and found one Vogt in charge, whom he relieved. Vogt said the vessel was leaking, and Menge would have to keep her bailed out. He told Menge where to find a lantern, and showed him a bucket and a couple of cans to use in bailing. Menge went in and out of the cabin a number of times during the night while engaged in bailing. The explosion occurred about 5 o'clock in the morning. At the time of the explosion Menge was engaged in bailing the launch. It appears from Menge's testimony that, when he first went into the boat, there was considerable odor; that he smelled something like oil; that he knew the vessel was a gasoline launch before he went on her; and that he knew that gasoline was explosive. There was evidence tending to show that both Vogt, whom Menge relieved when he took charge of the launch, and Menge, were employés of Elder Dempster & Co. Menge had been employed by the defendants as watchman for a period of about three months before the accident. He was employed on nights when his services were needed, but not regularly. He was in their employ commencing on the afternoon of September 8th and until the next morning when the accident occurred. He was paid a fixed sum for each night, and not by the week or month. Elder Dempster & Co. are large shipowners and agents, engaged in navigation and transporting freight to and from the city of New Orleans and to and from foreign ports, and received and delivered at the wharves of New Orleans large quantities of freight. The Edco, the launch on which this accident occurred, was owned by Mr. Warriner, one of Elder Dempster & Co.'s representatives in New Orleans, and was used by their employés engaged in handling their ships and cargoes in and around the city of New Orleans. There was considerable evidence, but the foregoing sufficiently states the case for the purpose of noticing the questions we consider important in determining it. We notice only two of the questions raised by the exceptions and assignments of error, and which were stressed in argument, as they will be controlling in the disposition of the case.

The first is that the court erred in failing to charge the jury on the question of contributory negligence. The defendants' theory of the accident was that it occurred while Menge was trying to pour oil from one lantern into another. This was the independent negligence set up by the defendants against Menge, and this, it was said, was the cause of the explosion. The court in the charge presented to the jury the two theories—the one, the plaintiff's theory, that the explosion occurred by reason of the oil being negligently allowed to leak on account of the condition of the machinery, valves, etc., and the other, the defendants' theory, that the plaintiff was engaged in pouring oil from one lantern to another at the time, and that, while they had the posi-

tive testimony of the plaintiff that it did not occur as the defendants contended, still they had the circumstances which were offered tending to show that there were two lanterns found where the explosion occurred. The contention here is that the defendants in the Circuit Court were entitled to have an instruction on the plaintiff's alleged contributory negligence.

The court charged the jury as follows:

"The defendant answers that the accident was due not to any negligence of the defendant. but solely to the independent negligence of the plaintiff himself. The defense is not contributory negligence but exclusive negligence of the plaintiff. If the accident happened as the plaintiff alleged it did, as he testified it did, then it could not possibly have happened in the way in which the defendant alleges it did, and, on the other hand, if it happened in the manner in which the defendant alleges it did, then it could not have happened in the way in which the plaintiff avers it happened."

The court also refused to give to the jury the following charge:

"That if the jury find that the plaintiff knew that gasoline was explosive, and knew that the launch on which he was engaged was a gasoline launch, and that immediately upon coming on board of said launch he detected a noxious odor, which made him sick, and if the jury find that he discovered the presence of gasoline gas while bailing the said water out of said cabin during the night, and before said explosion, it was the duty of the plaintiff under the circumstances to make an examination and inspection of the premises in which he was working to ascertain the cause of the presence of said gasoline gas, and to take such reasonable precautions for his own safety as would avoid an explosion of said gas, and his failure to do so would be negligence contributing to the accident, and thereby bar recovery against the defendant."

We think the charge given, as quoted above, was erroneous, and that the defendants were entitled to have the jury instructed substantially as requested on the subject of contributory negligence. The defendants had pleaded both contributory negligence and independent negligence on the part of the plaintiff, and we think the facts entitled them to an instruction to the jury on both points of defense. While it is true that there were two distinct theories of the case apparently insisted upon by the parties, on the part of the plaintiff that the accident was due entirely to the negligence of the defendants in having leaking and defective machinery on the vessel, and on the part of the defendants that it was caused by the plaintiff's pouring oil from one lamp to another, and while it is true that this alleged negligent conduct of the plaintiff might have been the independent and real cause of the explosion—still it might also have been a co-operating and contributing cause. If the cabin of the vessel was filled with dangerous gases, and the plaintiff used the two lanterns in such a way as to cause those gases to ignite and result in the explosion, this might we think reasonably be said to be a contributing cause, aside from the question of its being the independent cause. We are clear that the jury were entitled to have the law of contributory negligence presented to them on the facts of the case.

The next question presented is as to the action of the court in instructing the jury on the subject of the credibility of witnesses, and especially of the weight to be given the testimony of the plaintiff Menge. The court instructed the jury as follows:

"Now, as to how the accident happened, I want to say that you, gentlemen of the jury, are the sole judges. I called your attention to some of the evidence, but you are to disregard anything that seems a comment or expression of opinion on my part as to the effect of that evidence. It is for you to judge from the evidence before you, how the accident did occur. The plaintiff has sworn positively how it occurred. He was the only eyewitness to the accident. He swears that there was an explosion. Now, it is for you to decide whether you will believe him or not. If you believe him—and in determining whether you will believe him or not you must bear in mind that no attempt has been made to impeach his character for truth and veracity, he has lived in this community for 25 or 30 or 40 years, and must be pretty well known from his occupation as gardener and watchman, and no effort has been made to show that he is generally a person unworthy of belief—that raises a presumption which you are to apply in this case that ordinarily he is a man whose word can be relied on."

It will be perceived that the instruction of the court was to the effect that the fact that Menge had not been impeached raised a presumption in favor of the truth of his account of the transaction. We think this was error. We do not think it was proper for the court to tell the jury that, because a witness had not been impeached, there was a presumption in favor of the truth of what he had stated. The party in opposition to whom a witness is called may well rely upon the inherent improbability of the story told by the witness. It may be so inconsistent with itself and with conceded facts in the case that are matters of common knowledge as to justify the jury in rejecting it entirely. It will not do to say, therefore, that because there is a failure to impeach a witness by proving his general bad character or in other ways known to the law that a story related by the witness may not be rejected on account of its own inherent weakness or improbability.

In Quock Ting v. United States, 140 U. S. 420, 11 Sup. Ct. 734, 35 L. Ed. 501, the Supreme Court says this:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statement, although there be no adverse verbal testimony adduced."

The court, also, in the Quock Ting Case approves the case of Kavanagh v. Wilson, 70 N. Y. 177–179, and in referring to that case, and other cases, uses the following language:

"In Koehler v. Adler, 78 N. Y. 287, it was held that court or jury was not bound to adopt the statements of a witness simply for the reason that no witness had denied them, and that the character of the witness was not impeached, and that the witness might be contradicted by circumstances as well as by statements of others contrary to his own, or there might be such a degree of improbability in his statements as to deprive them of credit, however positively made. The case of Elwood v. Western Union Tel. Co., 45 N. Y. 549, 6 Am. Rep. 140, was cited in support of this position, where in de-

livering the opinion of the court the rule and its exceptions are stated by Judge Rapallo with great clearness and precision; so, also, as the case of Kavanagh v. Wilson, above referred to. In Wait v. McNeil, 7 Mass. 261, the Supreme Court of Massachusetts held that a verdict was not to be set aside, although it was given against the positive testimony of a witness not impeached, where there were circumstances in evidence tending to lessen the probability that such testimony was true. Numerous other cases might be cited in support of this same general doctrine."

In Chicago Union Traction Co. v. O'Brien, 219 Ill. 303–308, 76 N. E. 341–343, in the opinion by the court, discussing the question here involved, the following is said:

"The part of the instruction which states that witnesses, like all other citizens, are presumed by the law to be law-abiding citizens, and the law supplies a proper method of impeaching their evidence in cases where it can be impeached, is equally vicious with the other part. The question of the credibility of witnesses is exclusively within the province of the jury; and it is not the right of the court to take that question from them. Whether a witness has been impeached is a question of fact, and not of law, and, when not impeached, it is for the jury to determine whether he shall be believed, and to what extent. The court may give the jury general rules for their guidance. but where witnesses contradict each other as to matters of fact, and there is no impeachment of any witness, as was the case here, the law indulges no presumption that they are all telling the truth. When a witness testifies in a case, the inherent improbability of his statements may induce the jury to disbelieve him, although he is not contradicted. How much weight is to be given to his testimony depends largely upon his appearance, his manner of testifying, and all the other evidence and circumstances from which the jury may credit or discredit him. Where witnesses contradict each other, and the result of the case depends upon their credibility, it is for the jury to determine which one they will believe. Stampofski v. Steffens, 79 Ill. 303. The law has no rule which the court may lay down in instructions to the jury that there is a presumption that an unimpeached witness has testified truly, and such instructions infringe upon the province of the jury to determine the credibility of the witnesses and the weight and value of their testimony. Hauser v. People, 210 Ill. 253, 71 N. E. 416; 30 Am. & Eng. Ency. of Law (2d Ed.) 1068; 11 Ency. of Pl. & Pr. 312."

Following the remarks of the court as to the weight to be given the testimony of Menge, the following language is used in reference to the testimony of another witness in the case:

"There is the negro woman who says she was a square or a square and a half away from the boat, and was awakened by an explosion which she described in language that is evidently exaggerated. Now, in order to determine what credence you ought to give to that negro woman's testimony, you must also bear in mind that she, too, has the benefit of a character which has not been impeached, and the door was wide open to the defendants, if it was open to impeachment. She gave the name of a gentleman for whom she worked and where she had lived on State street in this city. With this data it would have been very easy for the defendants in this case to have attacked her character if her character was generally a bad character."

We think these two instructions were calculated to impress the jury unduly with the idea that the testimony of these two witnesses was to be believed and acted upon solely because the defendants had failed to show bad character and impeach them in that way. It manifestly tended to prevent the defendants from having the benefit of what they claimed; that is, as we understand it, that the testimony of these two witnesses was improbable of itself, without reference to whether their characters were good or bad. In addition to this, we think the court

might well have coupled with whatever was said on the subject of the
apparent good character of the plaintiff the fact of his interest in the
case. This is always a matter to be considered in connection with the
weight to be given the testimony of those interested in the result of
litigation.

Both of these errors we think tended to prejudice the defendants in
the trial of the case, and may have contributed substantially to the re-
sult reached by the jury. For the reasons given, we are constrained
to reverse the judgment of the court below, and remand the case, with
instructions to award a new trial.

PARDEE, Circuit Judge. I concur with the court in the foregoing
opinion, but think that the issue presented in the answer of fellow serv-
ant negligence should have been passed upon.

The trial judge instructed the jury that plaintiff was not a fellow
servant with the employés of the defendant who were concerned in
bringing about the condition of the boat when the plaintiff was in-
jured, to which exception was made, and it is here presented by bill
of exceptions. It was shown on the trial that Menge had been in the
employ of Elder Dempster & Co. as a watchman for a period of about
three months before the accident, and was so employed on the night
of the accident; that when he reported for duty to Wilt, foreman or
roundsman of watchmen, employed by defendant, on the evening of
Sunday, September 8, 1901, he was told to go up to the launch of El-
der Dempster & Co.; lying up at Walnut street and the river, Wilt
saying to him: "They want you up there, the launch is leaking"—and
that he would find a man up there. The man in charge of the Edco,
who gave plaintiff instructions as to bailing out the boat, was one
Vogt, who, while registered as the master of the launch, performed the
duties of deckhand and watchman, and was employed by defendant.
He had during Sunday been watching the Edco and bailing her out
just as Menge was told to do during the night. The Edco was a
gasoline launch, and was used by Elder Dempster & Co. for the pur-
pose of its business. When in use Capt. Treleaven, the outdoor rep-
resentative of defendant, was captain, and George Brewster was en-
gineer, and Vogt the deckhand. Neither Treleaven nor Brewster had
been on the boat since the Saturday preceding the accident, which hap-
pened about 5 o'clock on the morning of Monday, September 9, 1901.
If there was gasoline in the cabin of the launch where Menge was
working, it can be accounted for only upon the theory that gasoline
leaked during the night out of the pipe supplying the port engine with
gasoline from the tank underneath the forward deck. This pipe was
disconnected from the port engine, and was turned up at the end, and
a piece of waste had been put in the end as a stopper. The valve
which releases the oil from the supply tank had been opened by Vogt
to get a small quantity of gasoline to clean his trousers between 1 and
2 o'clock in the afternoon before the arrival of Menge, and, as Vogt
testifies, the valve was again tightly closed by him. This leakage, if
there was any, must have, under the evidence, been caused by the fail-
ure of Vogt to close the valve tight enough to prevent the leakage of
oil, or to put back the waste as he found it. If the evidence establishes

that the leakage was so caused then the presence of gasoline oil and vapor was due to the negligence of Vogt, who was a fellow servant with Menge, and no recovery can be had against the common master for plaintiff's injuries, because such act was an act of administration in using the property, and not a failure of duty of the master in furnishing a safe place. Kinnear Co. v. Carlisle, 152 Fed. 937, 82 C. C. A. 81; also American Bridge Co. v. Seeds, 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041; Armour v. Russell, 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A. (N. S.) 602.

The judge adds to the bill of exceptions a per curiam, as follows:

"That plaintiff was a mere watchman, employed by defendant's agent to watch the launch. It was defendant's absolute duty, through its agents, to inform the plaintiff of the dangers incident to the situation in which he was employed to watch. If the plaintiff was injured through some danger of the situation of which he should have a warning, the defendant cannot escape liability by alleging that, in any event, the plaintiff was a fellow servant with those who employed him and assigned him to the dangerous situation. I left it to the jury to decide whether the situation was dangerous, and required that plaintiff should be warned of the danger."

The theory of the defense was—and under the evidence it is very plausible—that, if the place was dangerous, it was made so by the negligence of Vogt, a fellow servant of Menge, and wholly without the knowledge of the plaintiff in error, who was neither informed nor had time and opportunity to inspect in person or by deputy. By this instruction the judge took from the jury the right to determine whether the condition of the boat was brought about by the negligence of Vogt and whether Vogt and Menge were fellow servants. In my opinion the jury should have been instructed to determine these facts from the evidence, and, if they found that Menge and Vogt were fellow servants, and that the condition of the boat was brought about by Vogt, then that Menge could not recover.

McCORMICK, Circuit Judge (dissenting). I cannot concur in the view of this case taken by the majority of the court. A careful reading of the record and consideration of all the proof satisfies me fully that the trial judge presented the matter fairly to the jury both in his statement of the testimony and in his suggestion to the jury of inferences that might be drawn from it. So, far from undertaking to conclude the jury, or to exclude from them, a consideration of the proof, he said in apt terms:

"Now, as to how the accident happened, I want to say that you, gentlemen of the jury, are the sole judges. I call your attention to some of the evidence, but you are to disregard anything that seems a comment or expression of opinion on my part as to the effect of that evidence. It is for you to judge from the evidence before you how the accident did occur. Plaintiff has sworn positively how it occurred. He was the only eyewitness to the accident."

And in the conclusion of the charge he used this language:

"Now in instructing you, gentlemen of the jury, that you are to consider and determine the damages, and in calling your attention to what you must consider in determining the damages, I do not mean to intimate in the slightest degree that it is incumbent on you to find for the plaintiff. I simply instruct you how to assess his damages if you find for the plaintiff, but if

you are satisfied either that the plaintiff has not proved his case, or that the defendant has shown that the accident resulted from the cause which the defendant set up in its answer, then you won't assess any damages for the plaintiff."

I have not been able to find in the charge anything that is obnoxious to the ruling of the Supreme Court in the case of Quock Ting, or in the language of Mr. Justice Fields, who announced the opinion of the court in that case. The holding of the court in that case as correctly stated in the syllabus is only to the effect that uncontradicted evidence of interested witnesses to an improbable fact does no require judgment to be rendered accordingly, in support of which Mr. Justice Fields cited Koehler v. Adler, 78 N. Y. 287, and quoted a paragraph from the syllabus of the report of that case. To show the application of that language to this case it is only necessary to quote the last paragraph of the opinion in Koehler v. Adler, supra, as follows:

"It may be that the evidence of these two witnesses ought to outweigh all the circumstances referred to. All that we intend to decide is that it was a question of fact for the jury, and not one of law for the court, and that the rule invoked is not applicable to the case."

The rule invoked was that the positive testimony of an unimpeached, uncontradicted witness cannot be disregarded by the court or jury arbitrarily or capriciously, but in applying this rule great care should be exercised. In Kavanagh v. Wilson, 70 N. Y. 177, the holding of the court was "that the case was a proper one for the jury, and that a refusal to submit the question to the jury, and a direction of a verdict for the amount claimed was error." To this effect and only to this effect is the case of Wait v. McNeil, 7 Mass. 261, referred to in one of the excerpts embraced in the opinion of the majority.

In my judgment none of these authorities reflect in the least upon the soundness of the action and views of the trial judge in the case before us in his instruction to the jury. I think the judgment should be affirmed.

## On Rehearing.

PER CURIAM. The petition for rehearing is denied.